**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**LEWIS JAMES VANCE,**

       **Petitioner,**

       **v.**

**WARDEN, NOBLE
CORRECTIONAL INST.,**

       **Respondent.**

       **CASE NO. 2:19-CV-00687
       JUDGE JAMES L. GRAHAM
       Chief Magistrate Judge Elizabeth P. Deavers**

**ORDER and
REPORT AND RECOMMENDATION**

Petitioner, a state prisoner, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Petition (ECF No. 4), Petitioner's Additional Evidentiary Documents (ECF Nos. 6, 14), Respondent's Return of Writ, Petitioner's Reply, and the exhibits of the parties. For the reasons that follow, the Undersigned **RECOMMENDS** that this action be **DISMISSED.**

Petitioner's Motion for Evidentiary Hearing, Subpoena Depositional Testimony, with the Appointment of Counsel (ECF No. 22) is **DENIED**.

**I. Facts and Procedural History**

Petitioner challenges his December 2016 convictions after a jury trial in the Jackson County Court of Common Pleas on aggravated murder, murder, felonious assault, and tampering with evidence. The Ohio Fourth District Court of Appeals summarized the facts and procedural history as follows:

> {¶ 2} On June 23, 2014, a Jackson County Grand Jury returned an indictment that charged appellant with crimes alleged to have been committed against Patrick Morgan, including aggravated murder in violation of R.C. 2903.01(D), murder in violation of R.C. 2903.02(A), murder in violation of R.C. 2903.02(B), felonious

assault in violation of R.C. 2903.11(A)(1), and felonious assault in violation of R.C. 2903.11(A)(2). The indictment also included crimes alleged to have been committed against Rachel Canode and her daughter M.C., including kidnapping in violation of R.C. 2905.01(A)(4), abduction in violation of R.C. 2905.02(A)(2), attempted rape in violation of R.C. 2923.02(A)/2907.02(A)(2), tampering with evidence in violation of R.C. 29021.12(A), abduction in violation of R.C. 2905.02(A)(2), and kidnapping in violation of R.C. 2905.01(B)(2). The trial court appointed counsel and appellant entered not guilty pleas to all charges.

{¶ 3} Counsel filed various motions and, inter alia, requested a competency evaluation. The trial court granted the request. At the November 21, 2014 competency hearing, both parties stipulated to the forensic report and the court later determined appellant to be competent to stand trial.

{¶ 4} On March 30, 2015, appellant's trial counsel requested leave to change appellant's plea to not guilty by reason of insanity (NGRI) and an evaluation, along with a third competency evaluation. The trial court granted appellant's request for leave to change his plea and ordered an evaluation at Appalachian Behavioral Healthcare. However, on June 16, 2015, the court ordered the evaluation to occur at Twin Valley Behavioral Healthcare. The court also denied the request for the third competency evaluation.

{¶ 5} On February 19, 2016, appellant sent a *pro se* letter to the trial court judge and indicated that he wished to have different counsel. At this juncture, counsel also requested yet another competency evaluation, but the trial court indicated that both prior evaluations determined appellant's competency, as set forth in R.C. 2945.37(G), and that appellant raised no additional facts or argument as to why a third competency evaluation was necessary. Thus, the court denied the motion.

{¶ 6} On July 14, 2016, the trial court issued a pretrial order and indicated that it had received additional unsolicited correspondence from appellant, including: (1) a June 27, 2016 letter, (2) a June 27, 2016 voluntary statement, (3) a June 24, 2016 voluntary statement, and (4) a June 19, 2016 motion for dismissal and a list of witnesses. Because appellant had counsel, the court did not file any of the documents, but instructed counsel to file, within 14 days, any necessary motion regarding the issues that appellant raised in the documents. In a separate order, the court indicated that it had received defendant's *pro se* motion for acquittal, but again stated that it would not consider appellant's *pro se* motion because counsel represented appellant.

{¶ 7} The trial court held a four day trial beginning October 20, 2016. The first witness, William Ghearing, stated that he was driving toward Wellston, Ohio at 7:00 or 8:00 p.m. on November 29, 2013 when appellant's pick-up truck struck him head-on. When Ghearing approached appellant, appellant told him "You never seen me. You never seen me at all, and don't know who I am." Shortly thereafter, appellant disappeared.

{¶ 8} Chillicothe Police Officer Morgan Music testified that at the time of the accident, he worked for the Coalton Police Department. After Officer Music arrived at the crash site, he noticed a body in the truck bed. Once he secured the scene, Officer Music also learned that a man had been observed walking about a quarter mile away. Officer Music assisted in detaining that man (appellant), who displayed blood on his face, pants and jacket. Jackson County Sheriff's Deputy Urias Hall later visited the hospital to see appellant and testified that he smelled of alcohol, but appeared to be oriented.

{¶ 9} Officers eventually learned that appellant's truck actually belonged to Patrick Morgan. Also, Ohio Bureau of Criminal Investigation (BCI) Special Agent Bryan White testified about processing the vehicle crash site, and stated that the victim's (Morgan's) pants and underwear were found around his knees, and that the victim had only one shoe.

{¶ 10} Nineteen-year-old Dustin Jones testified that on the night in question, appellant came to his parents' neighboring home and asked him to help load a deer into a truck. Jones assisted, but observed that the object was not a deer but rather a human body that he recognized as the person who had been staying with appellant. Appellant then threatened Jones and his family with harm if he did not help. Jones helped appellant, then returned to his parents' home. The following morning, he told his father about the incident.

{¶ 11} Rachel Canode testified that, as a friend of appellant's sister, she knew appellant. Canode explained that she was at her mother's house on November 29, 2013 when appellant came by to look for her mother to sell some rings. Canode told appellant that her mother was at a friend's house, and that she and her twelve-year-old daughter (M.C.) were also getting ready to walk to that house. Canode stated that while appellant walked with them, he kept putting his arms around her and grabbing her breasts and legs. Canode testified that the second or third time appellant put his arms around her, a knife fell from appellant's coat. When they arrived at appellant's sister's house (the house where appellant was living), he started to walk up the sidewalk to the home while Canode attempted to escape his grasp. Ultimately, Canode's daughter (M.C.) grabbed appellant's arm and appellant put the knife to her throat. Canode stated that she and her daughter then fled to her mother's house.

{¶ 12} Wellston Police Department Officer Steve Wilbur testified that he was at the fire station when he heard the radio call about the crash and the body in the truck bed. Officer Wilbur also explained that he later received a call from Rachel Canode who stated that appellant attempted to force her and her daughter into a house. Officer Wilbur testified that he met with Canode, then walked to the home where appellant had been living. When no one answered the door, Officer Wilbur looked in the windows. Blood could be seen on the porch and inside the house on a couch and a knife. Officer Wilbur also found a single shoe in the driveway.

{¶ 13} BCI Agent Todd Fortner testified that he processed the crime scene at the home and found no signs of struggle. Fortner observed two couches, one with and one without bloodstains, a wooden chair, a lamp, a table and a small radio. None of the furniture had been overturned or broken. Because one couch and the door area contained all of the bloodstains, Fortner testified that, based on his experience, he believed that at the time of the attack the victim was either lying or sitting on the couch.

{¶ 14} BCI Forensic Scientist (DNA Section) Andrea Weisenburger testified that (1) the knife blade recovered from appellant's home contained Patrick Morgan's blood, (2) the knife handle had mostly Morgan's blood, but also some of appellant's blood, (3) Morgan's blood appeared on appellant's jeans, and (4) the truck's air bag had mostly Morgan's blood, but also some of appellant's blood.

{¶ 15} Franklin County forensic pathologist John Daniels testified that he performed Patrick Morgan's autopsy. The autopsy revealed multiple stab wounds to Morgan's face, eye and neck, including a wound through his eye and one inch into his brain. In total, Morgan had 24 wounds, including defensive wrist wounds. Daniels testified that the manner of death was homicide.

{¶ 16} Ohio Department of Rehabilitation and Corrections Parole Officer Brett McRoberts testified that on November 29, 2013, appellant was under his supervision while on community control after his judicial release. McRoberts noted that appellant had been living at a homeless shelter in Athens, but McRoberts did not know that appellant had moved to Wellston.

{¶ 17} At the close of the state's evidence, appellant's counsel requested a Crim.R. 29 motion for dismissal of Count 8 of the indictment (rape). The trial court denied the motion.

{¶ 18} Michelle Vance, appellant's sister, testified that her brother and his roommate, Morgan, were living at her home. She explained that she offered the two a place to stay after they had been removed from Timothy House, an Athens shelter.

{¶ 19} Phillip Lemaster testified that Jay Poe told him that Brian Canode, Rachel Canode's brother, wanted to talk with him. Lemaster stated that Brian Canode asked him to assault appellant in exchange for heroin, and that he agreed to do so. Brian Canode and Lemaster parked at Brian Canode's mother's house, then Lemaster, Canode and Jay Poe, who had been waiting at the Canode home, walked to appellant's house. Lemaster stated that appellant's truck was not at the house and when no one answered their knock, Brian Canode took Lemaster home.

{¶ 20} Brian Canode, however, denied any agreement with Lemaster to attack appellant. Canode also testified that he, Rachel Canode's brother, went to appellant's home that evening, but because he did not see the truck that his sister

4

described, he left the residence. Against the advice of counsel, appellant chose to exercise his right to testify. On the night in question, appellant and Morgan were abusing drugs and alcohol. Appellant claimed that Rachel Canode's brother and several other men came to the house with bats and a knife and attacked him and Morgan. Appellant testified that the men beat him with a bat and raped him with a stick, but appellant managed to drag Morgan from the house and screamed for help. Appellant left the home to get help, but because he was unsuccessful in that endeavor, he returned to the house to save Morgan. After the men overwhelmed appellant, the men forced appellant into the truck and threw Morgan into the truck bed. Appellant testified that he did not kill Morgan, that he did not grab Rachel Canode and that he did not attempt to restrain Canode or her daughter. Appellant, however, admitted that officers found his knife at the scene and that his knife contained Morgan's blood.

{¶ 21} After the four-day trial, the jury found appellant guilty of: Count 1 aggravated murder R.C. 2903.01(D), Count 2 murder R.C. 2903.02(A), Count 3 murder R.C. 2903.02(B)), Count 4 felonious assault R.C. 2903.11(A)(1), Count 5 felonious assault R.C. 2903.11(A)(2), and Count 9 tampering with evidence R.C. 2921.12(A). The jury also found appellant not guilty of: Count 6 kidnapping R.C. 2905.01(A)(4), Count 7 abduction R.C. 2905.02(A)(2), Count 8 attempted rape R.C. 2923.02(A)/ 2907.02(A)(2), Count 10 abduction R.C. 2905.02(A)(2), and Count 11 kidnapping R.C. 2905.01(B)(2).

{¶ 22} The trial court sentenced appellant to serve life in prison without parole on count one (aggravated murder) and thirty-six months on count 9 (tampering with evidence), with the sentences to be served consecutively to one another. At that point, appellant filed a *pro se* (1) Crim.R. 33 motion for new trial and argued that irregularities existed in the court proceedings, including jury and prosecutorial misconduct, and that new evidence supported his self-defense claim, and (2) a Crim.R. 29 motion for judgment of acquittal. This appeal followed.

*State v. Vance*, 4th Dist. No. 16CA11, 2018 WL 1660068, at *1-4 (Ohio Ct. App. March 22, 2018). Petitioner raised the following assignments of error:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT REFUSED TO HOLD A HEARING OR REVIEW APPELLANT VANCE'S MOTION FOR NEW TRIAL. FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION; ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION; CRIM.R. 33."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED BY FAILING TO PROPERLY NOTIFY APPELLANT VANCE THAT HE WAS SUBJECT TO A DISCRETIONARY TERM OF UP TO THREE YEARS OF POST–RELEASE CONTROL AT THE SENTENCING HEARING. ADDITIONALLY, ANY NOTIFICATION REGARDING POST–RELEASE CONTROL WAS OMITTED FROM THE SENTENCING ENTRY. THESE FAILURES VIOLATED VANCE'S CONSTITUTIONAL RIGHTS AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."

THIRD ASSIGNMENT OF ERROR:

"THE SENTENCE IMPOSED BY THE TRIAL COURT SHOULD BE REVERSED AND REMANDED AS IT DOES NOT COMPORT WITH THE PURPOSES OF FELONY SENTENCING. FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION; ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION; R.C. 2929.11."

FOURTH ASSIGNMENT OF ERROR:

"THE TRIAL COURT FAILED TO SPECIFY ITS CONSECUTIVE SENTENCING FINDINGS IN ITS JUDGMENT ENTRY. R.C. 2929.14(C)(4)."

*Id*. at 1. On March 22, 2018, the appellate court overruled Petitioner's first and third assignments of error, found the second and fourth assignments of error to be well-taken, and remanded the case to the trial court to address the post release control for tampering with evidence and the findings for consecutive sentences. *Id*. On July 5, 2018, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Vance*, 153 Ohio St.3d 1434 (Ohio 2018). On September 26, 2018, the Ohio Supreme Court denied the motion for reconsideration. *State v. Vance*, 153 Ohio St.3d 1485 (Ohio 2018).

{¶ 5} While his appeal was pending, appellant filed various *pro se* motions, including a *pro se* petition for postconviction relief on a *pro se* petition to vacate or set aside judgment of conviction or sentence and a *pro se* motion for expert assistance. The trial court denied the postconviction relief petition and indicated that (1) appellant did not attach materials in support of his petition, and (2) no substantive grounds exist for relief. In addition, on November 1, 2017 the trial court issued an entry that chronicled and denied all 21 of appellant's motions because the court either lacked jurisdiction to consider certain motions, some motions did not set forth a request that the court could grant, or some motions are nonsensical. Thus,

the trial court denied the petition and found that appellant is not entitled to relief as provided in R.C. 2953.21. On October 29, 2018, this court affirmed the denial of appellant's postconviction relief petition. *See State v. Vance*, 4th Dist. Jackson No. 17CA9, 2018-Ohio-4479.

{¶ 6} On July 27, 2018, appellant filed a[n] App. R. 26(B) *pro se* application to reopen his appeal. We declined to grant appellant's application because the application was untimely, failed to assign error and failed on the merits. *See State v. Vance,* 4th Dist. Jackson No. 16CA11, 2018-0hio-1313.

{¶ 7} On May 31, 2018, after remand, the trial court held a R.C. 2929.19 resentencing hearing with appellant represented by counsel. The court's order on resentencing reiterated the prior guilty verdicts and terms of imprisonment, but notified appellant of the optional three-year postrelease control term and placed on the record the trial court's reasoning for consecutive sentences. The court informed appellant that upon completion of the full sentence, he will serve a five year mandatory period of postrelease control on count 1, and a discretionary period of three years of postrelease control on count 9 under the direction of the Adult Parole Authority. The court's order further indicated that a violation of postrelease control will result in a sanction of one-half of the sentence imposed and, should appellant commit a new felony while on postrelease control, the greater of the balance of the postrelease control time or one year would be imposed as an additional prison term. This appeal followed.

*State v. Vance*, 4th Dist. No. 18CA2, 2018 WL 6843756, at *2 (Ohio Ct. App. Dec. 17, 2018). Petitioner asserted the following assignments of error:

FIRST ASSIGNMENT OF ERROR:

"APPELLANT, LEWIS J. VANCE RAISED THE ISSUE OF HIS TRIAL COUNSEL, WILLIAM J. MOONEY # (0002729) AT THE RE-SENTENCING HEARING ON REMAND. ATTORNEY MOONEY WAS AGAIN UNPREPARED AND REFUSED TO ARGUE VANCE'S CASE. HE CONTINUED WITH HIS (ADVERSARIAL AND STRAINED COMMUNICATION) WITH VANCE. APPELLANT VANCE ASKS ATTORNEY MOONEY IN PHONE CONVERSATION ON JUNE 29TH, 2018 TO FILE HIS APPEAL ON THE RE-SENTENCING REMAND. MOONEY REFUSED TO FILE VANCE'S APPEAL AND SAID HIS OFFICE DOES NOT FILE AFTER DEFENDING A CLIENT AT TRIAL. VANCE SHOWED WHERE ATTORNEY MOONEY FILED HIS DIRECT APPEAL ON DECEMBER 20TH, 2016 AFTER TELLING VANCE HE WILL NOT FILE THIS FOR HIM. APPELLANT, LEWIS J. VANCE AGAIN ASK (SIC) TRIAL COURT FOR NEW COUNSEL AT THAT REMAND HEARING. SIXTH AMENDMENT, UNITED STATES CONSTITUTION; ARTICLE I, SECTION 10, OHIO CONSTITUTION."

SECOND ASSIGNMENT OF ERROR:

"APPELLANT, LEWIS J. VANCE RAISED THE ISSUE OF THE SENTENCE IMPOSED BY THE TRIAL COURT FOR ITS EXCESSIVENESS AND UNCONSTITUTIONAL WRONG DOINGS. VANCE WAS REMANDED TO TRIAL COURT FOR ONE PART OF THE UNCONSTITUTIONAL ABUSE OF HIS SENTENCE AND THE CASE SHOULD AGAIN BE REVERSED AND REMANDED AS IT DOES NOT COMPORT WITH THE PURPOSES OF FELONY SENTENCING. FIFTH AND FOURTEENTH AMENDMENTS, UNITED STATES CONSTITUTION; ARTICLE 1, SECTION 10, OHIO CONSTITUTION, R.C. 2929.11 AND SHOULD BE SUSTAINED AND REMANDED TO TRIAL COURT FOR THESE ISSUES."

THIRD ASSIGNMENT OF ERROR:

"TRIAL COURT AGAIN ABUSED ITS DISCRETION WHEN ON REMAND FOR RE-SENTENCING. VANCE WAS AGAIN DISCRIMINATED AGAINST AND TRIAL COURT USED BIAS (SIC) JUDGMENTS OF THE FACTS OF VANCE'S CASE. APPELLANT, LEWIS J. VANCE TRIED AGAIN TO HAVE COUNSEL AND TRIAL COURT REVIEW THE TIME IN WHICH HIS TRIAL LASTED, CASE NO. 14-CR-0118 AS PART OF THE ABUSE OF DISCRETION AND HIS DUE PROCESS RIGHTS ALONG WITH THESE OTHER ISSUES OF THIS ABUSE. VANCE'S NEW TRIAL, CRIM. R. 33 AND TRIAL COURT REFUSING HIM A HEARING. THERE WAS THE ABUSE OF THE JURY REQUEST VANCE MADE AT TRIAL FOR A NEW JURY, A HEARING WAS CONDUCTED IN ACCORDANCE WITH REMMER AND R.C. 2945.03 WHERE VANCE ASK FOR MEMBERS TO BE REMOVED AND PROBLEMS BEGAN WITH COUNSEL THERE ONCE AGAIN. ON AUGUST 10TH, 2018 IN A NOTICE OF THE TRANSITION OF THE RECORDS IT STATES THAT THE RECORD DID NOT CONTAIN A TRANSCRIPT. IN VANCE'S CORRECTIONS OF THAT APPEAL HE DID ASK FOR A COMPLETE COPY OF THOSE TRANSCRIPTS FOR THE RECORDS. AGAIN AN ABUSE OF DISCRETION FROM THE TRIAL COURT. APPELLANT VANCE FILES (*PRO SE*), HE DOES NOT HAVE A COPY OF THE TRANSCRIPTS OF PROCEEDINGS OR OTHER REQUEST HE HAS MADE TO THE COURT OR COUNSEL FOR HIM TO FILE WITHIN HIS CASES. FIFTH AND FOURTEENTH AMENDMENTS, UNITED STATES CONSTITUTION; ARTICLE I, SECTION 10, OHIO CONSTITUTION AND EIGHTH AMENDMENT, UNITED STATES CONSTITUTION, ARTICLE 1, SECTION 9 OHIO CONSTITUTION. TRIAL COURT CONTINUES TO RULE IN BAD FAITH ON VANCE'S REQUEST AND WITHIN HEARINGS WITH BIAS AND DISCRIMINATING JUDGMENTS."

*Id.* at *1.  On December 17, 2018, the appellate court affirmed the judgment of the trial court. *Id.*  On April 3, 2019, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Vance*, 155 Ohio St.3d 1414 (Ohio 2019).

On March 18, 2019, Petitioner filed this *pro se* habeas corpus petition.  He asserts that the trial court improperly denied him a hearing on his motion for a new trial (claim one); that his sentence is inhumane (claim two); that his convictions are against the manifest weight of the evidence and the evidence is constitutionally insufficient to sustain his convictions (claim three); and that he was denied the effective assistance of trial and appellate counsel (claim four).  It is the position of the Respondent that Petitioner's claims are procedurally defaulted or without merit.

## II.  Motion for Evidentiary Hearing, Depositions and the Appointment of Counsel

Petitioner has filed a request for the appointment of counsel, an evidentiary hearing, and "depositional testimony."  In support, Petitioner states that he acted in self defense.  He complains that one Jeremy Poe did not appear to testify at trial.  He claims that DVDs and videotapes will show that he acted in self defense.  He asserts that his attorney improperly failed to investigate.  Petitioner also refers to a purported confession from one of the assailants against him.  He has attached copies of his own handwritten statements and other record documents. (ECF No. 22, PAGEID # 352-429.)  None of these documents, however, support Petitioner's claim of actual innocence.  The Court is unable to locate the purported confession referred to by the Petitioner.  Petitioner's claim of actual innocence entirely lacks support.

The United States Supreme Court has held that a prisoners' post-conviction right to counsel extends only to the first appeal of right and no further.  *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("We have never held that prisoners have a constitutional right to counsel when

mounting collateral attacks upon their convictions and we decline to so hold today.").  Habeas

proceedings are considered to be civil in nature, and a petitioner has no constitutional right to

counsel in habeas corpus proceedings.  *Post v. Bradshaw*, 422 F.3d 419, 425 (6th Cir. 2005)

(citing *Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991)); *Cobas v. Burgess*, 306 F.3d 441,

444 (6th Cir. 2002).  Rather, "[w]henever the United States magistrate judge or the court

determines that the interests of justice so require, representation may be provided for any

financially eligible person who . . . is seeking relief under section 2241, 2254, or 2255 of title

28."  18 U.S.C. § 3006A(a)(2) and § 3006A(a)(2)(B).  "The decision to appoint counsel for a

federal habeas petitioner is within the discretion of the court and is required only where the

interests of justice or due process so require."  *Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir.

1986) (citations omitted).  The appointment of counsel is mandatory only where the record

indicates that an evidentiary hearing is required to resolve a petitioner's claims.  *See* Rule 8 of

the Rules Governing Section 2254 Cases in the United States District Courts.  In assessing

whether to exercise its discretion in appointing counsel on a petitioner's behalf, the Court should

consider "the legal and factual complexity of the case, the petitioner's ability to investigate and

present his claims, and any other relevant factors."  *Matthews v. Jones*, No. 5:13-cv-1850, 2015

WL 545752, at *3 (N.D. Ohio Jan. 22, 2015) (citations omitted).  "Where the issues involved can

be properly resolved on the basis of the state court record, a district court does not abuse its

discretion in denying a request for court-appointed counsel."  *Poulton v. Warden, Ross Corr.

Inst.*, No. 2:15-CV-02352, 2018 WL 527286, at * 6 (S.D. Ohio Jan. 24, 2018) (citations omitted).

The record does not indicate that an evidentiary hearing is required to resolve Petitioner's

claims, or that this case so complex that the interests of justice or due process require the

appointment of counsel on Petitioner's behalf.

Accordingly, Petitioner's request for appointment of counsel, an evidentiary hearing, and "depositional testimony" (ECF No. 22) is **DENIED.**

## III. Procedural Default

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. § 2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If the prisoner fails to do so, but still has an avenue open to present the claims, then the petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives

the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. As the Supreme Court found in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case—that is, they are "procedurally defaulted."

To determine whether procedural default bars a habeas petitioner's claim, courts in the Sixth Circuit engage in a four-part test. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Scuba v. Brigano*, 259 F. App'x 713, 718 (6th Cir. 2007) (following the four-part analysis of *Maupin*). First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. Second, the court must determine whether the state courts actually enforced the state procedural sanction. Third, the court must determine whether the forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Maupin*, 785 F.2d at 138. Finally, if "the court determines that a state procedural rule was not complied with and that the rule [has] an adequate and independent state ground, then the petitioner" may still obtain review of his or her claims on the merits if the petitioner establishes: (1) cause sufficient to excuse the default and (2) that he or she was actually prejudiced by the alleged constitutional error. *Id.*

In claim three, Petitioner asserts that his convictions are against the manifest weight of the evidence and that the evidence is constitutionally insufficient to sustain his convictions. In claim four, Petitioner asserts, *inter alia*, that he was denied the effective assistance of trial

counsel.  Petitioner failed to raise either of the foregoing claims on direct appeal, where he was represented by new counsel.  He may now no longer do so under Ohio's doctrine of *res judicata*. *See State v. Cole*, 2 Ohio St. 3d 112, 115 (1982); *State v. Perry*, 10 Ohio St. 2d 175, 180 (1967) (claims must be raised on direct appeal, if possible, or they will be barred by the doctrine of *res judicata*.).  Petitioner thereby has waived these claims for federal habeas corpus review.  The state courts were never given an opportunity to enforce this procedural rule due to the nature of Petitioner's procedural default.

Petitioner asserted a claim for ineffective assistance of trial counsel in his petition for post-conviction relief; however, the state appellate court explicitly refused to address the merits of that claim as barred under Ohio's doctrine of *res judicata*.  *State v. Vance*, 2018 WL 5796229, at *3.

> *Res judicata* applies to proceedings involving postconviction relief. *Black* at ¶ 10, citing *State v. Szefcyk*, 77 Ohio St.3d 93, 95, 671 N.E.2d 233 (1996). "Under the doctrine of *res judicata*, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment." *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967). "Therefore, 'any issue that could have been raised on direct appeal and was not is *res judicata* and not subject to review in subsequent proceedings.'" *Black* at ¶ 10, citing *State v. Segines,* 8th Dist. Cuyahoga No. 99789, 2013-Ohio-5259, ¶ 8, quoting *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, ¶ 16.
>
> {¶ 12} Although appellant pursued his postconviction petition *pro se*, counsel represented him at trial. Moreover, appellant had a different counsel for his direct appeal. Thus, appellant's direct appeal should have addressed the issue of ineffective assistance of counsel. *See State v. Vance*, 4th Dist. Jackson No. 16CA11, 2018-Ohio-1313.

*Id*.

Ohio's doctrine of *res judicata* is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's

reliance thereon, must rely in no part on federal law. *See Coleman*, 501 U.S. at 732–33. To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411, 423 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id.* (quoting *James v. Kentucky*, 466 U.S. 341, 348–351 (1984)); *see also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964). The United States Court of Appeals for the Sixth Circuit has consistently held that Ohio's doctrine of *res judicata*, *i.e.*, the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001*), cert. denied sub nom. Coleman v. Bagley*, 535 U.S. 1031 (2002); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000), *cert. denied*, 532 U.S. 989 (2001); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000) *cert. denied*, 531 U.S. 1082 (2001); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir.), *cert. denied,* 525 U.S. 935 (1998).

Ohio courts have consistently refused, in reliance on the doctrine of *res judicata*, to review the merits of claims because they are procedurally barred. *See Cole*, 2 Ohio St.3d at 112; *State v. Ishmail,* 67 Ohio St.2d 16, 18 (1981). Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that Ohio's doctrine of *res judicata* in this context does not rely on or otherwise implicate federal law. Accordingly, the Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

To the extent that Petitioner intends to assert a claim of ineffective assistance of counsel at his re-sentencing hearing, he has also waived this claim. The state appellate court dismissed the claim based on Petitioner's failure to provide a copy of the transcripts:

{¶ 7} On May 31, 2018, after remand, the trial court held a R.C. 2929.19 resentencing hearing with appellant represented by counsel. The court's order on resentencing reiterated the prior guilty verdicts and terms of imprisonment, but notified appellant of the optional three-year postrelease control term and placed on the record the trial court's reasoning for consecutive sentences. The court informed appellant that upon completion of the full sentence, he will serve a five year mandatory period of postrelease control on count 1, and a discretionary period of three years of postrelease control on count 9 under the direction of the Adult Parole Authority. The court's order further indicated that a violation of postrelease control will result in a sanction of one-half of the sentence imposed and, should appellant commit a new felony while on postrelease control, the greater of the balance of the postrelease control time or one year would be imposed as an additional prison term. This appeal followed.

. . . [W]e observe that the record before us does not contain a transcript of the trial court's May 31, 2018 resentencing hearing. Although appellant filed a request for transcript, a notice of transmission of the record without a transcript was filed August 7, 2018. App. R. 9 provides the procedure to make a transcript a part of the record. This rule also provides alternatives if a transcript is not available. See App.R. 9(C), (D).

{¶ 9} It is important to understand that "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to the assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980). Thus, due to appellant's failure in the case *sub judice* to file a transcript of the resentencing hearing, we presume the regularity of that proceeding and affirm the trial court's judgment. *See State ex rel. Hoag v. Lucas Cty. Bd. of Elections*, 125 Ohio St.3d 49, 2010-Ohio-1629, 925 N.E.2d 984, ¶ 12, citing *Christy v. Summit Cty. Bd. of Elections*, 77 Ohio St.3d 35, 39, 671 N.E.2d 1 (1996); *State ex rel. Duncan v. Portage Cty. Bd. of Elections*, 115 Ohio St.3d 405, 2007-Ohio-5346, 875 N.E.2d 578, ¶ 17. Once again, appellant has the responsibility to provide the reviewing court with a record of the facts, testimony, and evidentiary matters that are necessary to support the appellant's assignments of error. *Wozniak v. Wozniak*, 90 Ohio App.3d 400, 409, 629 N.E.2d 500, 506 (9th Dist. 1993); *Volodkevich v. Volodkevich*, 48 Ohio App.3d 313, 314, 549 N.E.2d 1237, 1238-1239 (9th Dist. 1989). He failed to do so, and we affirm the trial court's judgment.

\*\*\*

> To the extent that appellant alleges that counsel rendered ineffective assistance at the resentencing hearing. . . we presume the regularity of the proceedings due to the omission of the resentencing transcript. Thus, we overrule appellant's first assignment of error.

*State v. Vance*, 2018 WL 6843756, at \*3-4. Petitioner has thereby procedurally defaulted this claim for review in these proceedings. *See Onunwor v. Moore*, 655 F. App'x 369, 372-73 (6th Cir. 2016) (citing *Gonzales v. Wolfe*, 290 F. App'x 799, 804-05 (6th Cir. 2008) (holding that Ohio Appellate Rule 9(B) was an adequate and independent state ground to bar federal review).

Petitioner also asserts in claim four that he was denied the effective assistance of appellate counsel. He likewise has waived this claim for review by failing to comply with the time requirements of Ohio's Rule 26(B). The state appellate court denied Petitioner's Rule 26(B) application as untimely. *See Scuba v. Brigano*, 527 F.3d 479, 488 (6th Cir. 2007) (enforcing the procedural default under these circumstances).

Thus, Petitioner has waived habeas corpus claims three and four. He may still secure review of these claims on the merits if he demonstrates cause for his failure to follow the state procedural rules, as well as actual prejudice from the constitutional violations that he alleges. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[,] '. . . some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule.'" *Coleman*, 501 U.S. at 753 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). It is Petitioner's burden to show cause and prejudice. *Hinkle v. Randle, Warden*, 271 F.3d 239, 245 (6th Cir. 2001) (citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (internal citation omitted)). A petitioner's *pro se* status, ignorance of the law, or ignorance of procedural requirements are insufficient bases to excuse a procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004). Instead, in

order to establish cause, a petitioner "must present a substantial reason that is external to himself and cannot be fairly attributed to him." *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007). Petitioner has failed to establish any cause whatsoever for his procedural defaults.

The United States Supreme Court has held that a claim of actual innocence may be raised "to avoid a procedural bar to the consideration of the merits of [a petitioner's] constitutional claims." *Schlup v. Delo*, 513 U.S. 298, 326–27 (1995). "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray*, 477 U.S. at 496. In *Schlup*, the Supreme Court held that a credible showing of actual innocence was sufficient to authorize a federal court in reaching the merits of an otherwise procedurally-barred habeas petition. *Id.* at 317. However, a claim of actual innocence is "'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Id.* at 315 (quoting *Herrera*, 506 U.S. at 404). The actual innocence exception to procedural default allows a petitioner to pursue his constitutional claims if it is "more likely than not" that new evidence—*i.e.*, evidence not previously presented at trial—would allow no reasonable juror to find him guilty beyond a reasonable doubt. *Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005). Petitioner has failed to meet this standard here.

As discussed, Petitioner asserts that he is actually innocent. Petitioner states that he has obtained a notorized confession from a guilty assailant, and that trial video exhibits, and inconsistent statements from prosecution witnesses support his claim of actual innocence. (*See Additional Exhibiting Evidentiary Documents Newly Discovered Evidence*, ECF No. 6.) However, nothing in the record supports Petitioner's claim of actual innocence.

Petitioner has procedurally defaulted habeas corpus claims three and four.

## IV. Claim One

In claim one, Petitioner asserts that the trial court abused its discretion by in denying his motion for a new trial without a hearing. The state appellate court rejected this claim as follows:

> [A]ppellant asserts that the trial court erred by refusing to hold a hearing or to conduct a review of appellant's motion for new trial.
>
> {¶ 24} Generally, the decision to grant a new trial is within a trial court's discretion, and a ruling on a motion for a new trial will not be disturbed on appeal absent an abuse of that discretion. *State v. Schiebel*, 55 Ohio St.3d 71, 564 N.E.2d 54 (1990); *State v. Williams*, 43 Ohio St.2d 88, 330 N.E.2d 891 (1975). An abuse of discretion "implies that the court's attitude [was] unreasonable, arbitrary, or unconscionable." *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). "A decision is unreasonable if there is no sound reasoning process that would support that decision." *AAAA Enterprises, Inc. v. River Place Community Redevelopment,* 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).
>
> {¶ 25} Appellant filed a *pro se* motion for new trial, but the trial court refused to rule on appellant's *pro se* motion. Appellant contends that no sound reasoning process supported the court's decision, and, thus, the trial court's refusal to consider the motion constitutes an abuse of discretion. The state points out that the trial court refused to rule on the *pro se* motion because appellant had legal representation and that neither the United States Constitution nor the Ohio Constitution or case authority permits hybrid representation.
>
> {¶ 26} "Although appellant has the right either to appear *pro se* or to have counsel, he has no corresponding right to act as co-counsel on his own behalf." *State v. Thompson*, 33 Ohio St.3d 1, 6–7, 514 N.E.2d 407 (1987). The Supreme Court of Ohio has reaffirmed that principle and held that "in Ohio, a criminal defendant has the right to representation by counsel or to proceed *pro se* with the assistance of standby counsel. However, these two rights are independent of each other and may not be asserted simultaneously." *State v. Martin*, 103 Ohio St.3d 385, 2004–Ohio–5471, 816 N.E.2d 227, paragraph one of the syllabus.
>
> {¶ 27} In the case sub judice, appellant attempted to make multiple *pro se* filings while he had legal representation. The trial court aptly noted that appellant had legal representation and advised counsel to review the *pro se* filings and file any necessary motion within 14 days with regard to any relevant issues raised in the *pro se* documents. Once again, Ohio courts need not address *pro se* motions when the defendant enjoys the benefit of counsel. *See State v. Smith*, 4th Dist. Highland No. 09CA29, 2010–Ohio–4507, ¶ 100 ["The trial court indicated that it would refuse to consider motions filed by Smith because the court was appointing counsel to

represent him. We are satisfied that the trial court did not err as, although a defendant 'has the right either to appear *pro se* or to have counsel, he has no corresponding right to act as co-counsel on his own behalf.' "]; *State v. Smith*, 1st Dist. Hamilton Nos. C–160836 and C–160837, 2017–Ohio–8558; *State v. Greenleaf,* 11th Dist. Portage No. 2005–P–0017, 2006–Ohio–4317. "When a criminal defendant is represented by counsel and counsel does not join the defendant's *pro se* motion or otherwise indicate a need for the relief sought by the defendant *pro se*, the trial court cannot properly consider the defendant's *pro se* motion." *Smith* at ¶ 32, citing *State v. Davis*, 10th Dist. Franklin No. 05AP–193, 2006–Ohio–5039, ¶ 12; *State v. Pizzaro,* 8th Dist. Cuyahoga No. 94849, 2011–Ohio–611, ¶ 7 ["One who is represented by counsel and who does not move the court to proceed *pro se*, may not 'act as co-counsel on his own behalf.'", quoting *Greenleaf* at ¶ 70].

{¶ 28} Appellant, however, argues that *State v. Keene*, 4th Dist. Washington No. 16CA10, 2017–Ohio–7058, mandates a different result. In *Keene*, the defendant, prior to the scheduled sentencing hearing, sent two letters to the trial court, without counsel's assistance, and sought to withdraw his guilty pleas. Although the trial court held a hearing and ruled on the defendant's *pro se* motion in spite of counsel's representation, the court was not required to do so. Once again, the Supreme Court of Ohio has established that a defendant has either the right to representation by counsel or the right to proceed *pro se*, but has no right to hybrid representation. *Martin*, paragraph one of the syllabus.

{¶ 29} Accordingly, based upon the foregoing reasons we overrule appellant's first assignment of error.

*State v. Vance*, 2018 WL 1660068, at *4-5.

Petitioner's claim that the trial court "abused its discretion" by misapplying Ohio law, does not provide him relief. *See Petrone v. Bunting*, No. 5:13-cv-02187, 2015 WL 9918661, at *11 (N.D. Ohio Dec. 10, 2015) (citing *Pudelski v. Wilson*, 576 F.3d 595, 610 (6th Cir. 2009), *cert. denied*, 560 U.S. 904 (2010)). "State law issues are not subject to habeas review[.]" *Pudelski,* 576 F.3d at 611 (citing *Estelle v. McGuire*, 502 U.S. 62, 67068 (1991)). "To establish a constitutional due process claim, [petitioner] must demonstrate that the trial court's denial of his motion for new trial was 'so egregious' that it violated his right to a fundamentally fair trial." *Id*. (citing *Fleming v. Metrish*, 556 F.3d 520, 535 (6th Cir. 2009); *Baze v. Parker*, 371 F.3d 310, 324 (6th Cir. 2004). The record does not reflect such circumstances here.

Petitioner had no right to hybrid representation under federal law. *See Rojas v. Warden, Ross Correctional Inst.*, No. 3:13-cv-2521, 2015 WL 631183, at *7 (N.D. Ohio Feb. 12, 2015) (citing *United States v. Mosely,* 810 F./2d 93, 98 (6th Cir. 1987) (holding that a criminal defendant has a constitutional right to be represented by counsel or to represent himself during criminal proceedings, but not both.) (citing *Faretta v. California*, 422 U.S. 806 (1975)).

> Sixth Circuit caselaw is clear that a criminal defendant does not have a constitutional right to "hybrid representation." *United States v. Mosely*, 810 F.2d 93, 98 (6th Cir.1987). A defendant has a constitutional right to be represented by counsel or to represent himself during his criminal proceedings, but not both. *Id.* at 97 (citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). The Sixth Circuit explained: "The right to defend *pro se* and the right to counsel have been aptly described as two faces of the same coin, in that waiver of one constitutes a correlative assertion of the other." *Id.* at 97–98 (quoting *United States v. Conder*, 423 F.2d 904, 908 (6th Cir. 1970)) (internal quotation marks omitted). Hybrid representation is generally prohibited because it increases the risk of undue delay, jury confusion, and conflicts as to trial strategy. *Id.* at 98. When counsel has "performed in a highly competent and professional manner" and the defendant has been "given ample time to consult with his counsel over strategy," it is not an abuse of a court's discretion to prohibit hybrid representation. *Id.*

*Miller v. United States*, 561 F. App'x 485, 488-89 (6th Cir. 2014). Because no clearly established federal law supports the right to hybrid representation, this claim does not provide Petitioner a basis for relief. *See Salinas v. Hart*, No. 15-167-HRW-CJS, 2019 WL 4794743, at *21 (E.D. Ky. July 8, 2019).[1]

## V. Claim Two - Standard of Review

Petitioner seeks habeas relief under 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth standards governing this Court's review of state-court determinations. The United State Supreme Court has described AEDPA as "a formidable barrier

---

[1] As a result, Petitioner also has waived the underlying claims he presented in his motion for a new trial for review in these proceedings. *See Whatley v. Warden, Ross Corr. Inst.*, No. 2:16-cv-676, 2017 WL 1196168, at *5 (S.D. Ohio March 31, 2017)).

to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow,* 571 U.S. 12, 20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt." (internal quotation marks, citations, and footnote omitted)).

> The factual findings of the state appellate court are presumed to be correct.

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). "Under AEDPA, a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)); 28 U.S.C. § 2254(d)(1) (a petitioner must show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law"); 28 U.S.C. § 2254(d)(2) (a petitioner must show that the state court relied on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding"). The United States Court of Appeals for the Sixth Circuit has explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a

> different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d
> 389 (2000). A state court's decision is an "unreasonable application" under 28
> U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the
> Supreme] Court's cases but unreasonably applies it to the facts of the particular . .
> . case" or either unreasonably extends or unreasonably refuses to extend a legal
> principle from Supreme Court precedent to a new context. *Id*. at 407, 529 U.S. 362,
> 120 S.Ct. 1495, 146 L.Ed.2d 389.

Coley, 706 F.3d at 748–49. The burden of satisfying the standards set forth in § 2254 rests with

the petitioner. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

"In order for a federal court to find a state court's application of [Supreme Court

precedent] unreasonable, . . . [t]he state court's application must have been objectively

unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520–21,

(2003) (internal quotation marks omitted) (citing *Williams v. Taylor*, 529. U.S. at 409 and

*Lockyer v. Andrade,* 538 U.S. 63, 76 (2003)); *see also Harrington v. Richter*, 562 U.S. at 102

("A state court's determination that a claim lacks merit precludes federal habeas relief so long as

"'fairminded jurists could disagree' on the correctness of the state court's decision.") (quoting

*Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In considering a claim of "unreasonable

application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the

reasonableness of the state court's analysis. *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009)

("[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the

ultimate legal conclusion that the state court reached and not whether the state court considered

and discussed every angle of the evidence.") (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th

Cir. 2002) (en banc)); *see also Nicely v. Mills*, 521 F. App'x 398, 403 (6th Cir. 2013)

(considering evidence in the state court record that was "not expressly considered by the state

court in its opinion" to evaluate the reasonableness of state court's decision). Relatedly, in

evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a

court must review the state court's decision based solely on the record that was before it at the time it rendered its decision. *Pinholster*, 563 U.S. at 181. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id.* at 182.

## VI. Claim Two - Merits

In claim two, Petitioner asserts that the trial court imposed an unconstitutionally excessive sentence. The state appellate court rejected this claim as follows:

> [A]ppellant, citing the Fifth and Fourteenth Amendments to the United States Constitution, Article I, Section 10 of the Ohio Constitution and R.C. 2929.11, asserts that the trial court's sentence does not comport with the purposes of felony sentencing. In particular, appellant argues that the trial court's refusal to consider appellant's mental health issues and impose a term of life without parole, which will not provide appellant with an opportunity for parole or future mental health services, fails to comply with the requirements and purpose of R.C. 2929.11.

> {¶ 35} Appellant cites *State v. Marcum*, 146 Ohio St.3d 516, 2016–Ohio–1002, 59 N.E.3d 1231, for the proposition that an appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds, by clear and convincing evidence, that the record does not support the sentence. Counsel argues that appellant self-medicated with alcohol and drugs and had no access to professional mental health services. The state counters that *Marcum* dealt with sentencing for a classified felony, not for aggravated murder. *Id.* at ¶ 22–23. The state points out that *Marcum* relied on R.C. 2953.08 for the statutory authority to review a felony sentence, however, R.C. 2953.08(D)(3) makes clear, "[a] sentence imposed for aggravated murder or murder pursuant to sections 2929.02 to 2929.06 of the Revised Code is not subject to review under this section." (Emphasis added.)

> {¶ 36} The Supreme Court of Ohio has held that "R.C. 2953.08(D) is unambiguous. 'A sentence imposed for aggravated murder or murder pursuant to section 2929.02 to 2929.06 of the Revised Code is not subject to review under this section' clearly means what it says: such a sentence cannot be reviewed." *State v. Porterfield,* 106 Ohio St.3d 5, 2005–Ohio–3095, 829 N.E.2d 690, ¶ 17. Moreover, this court has held "[i]t is evident that the General Assembly intended to treat sentencing on aggravated murder and murder convictions differently from other felony sentences." *State v. Hawkins*, 4th Dist. No. 13CA3, 2014–Ohio–1224, ¶ 15, citing *State v. Porterfield* at ¶ 17–18. We wrote: "we find pursuant to R.C. 2953.08(D)(3), we lack statutory authority to review Hawkins' sentence on an evidentiary basis." *Id.*

{¶ 37} Appellant also contends that the trial court's sentence did not comport with due process and is excessive. However, our review of the record reveals that, although the trial court expressed concern and acknowledged appellant's mental health issues, and allowed competency evaluations and forensic reviews and pondered how better treatment earlier in life might have affected appellant, the court concluded that the aggravating factors nevertheless outweighed appellant's mental health concerns: "You know, we've talked about the failures of the mental health system. We've talked about the dramatic cuts to that system. Maybe if we had a system that was properly funded, Mr. Vance may have received appropriate treatment. But, those are all 'what ifs.' I don't know. The reality that I have to deal with is that Mr. Vance is a dangerous individual. He has committed a savage crime." The court further noted the injury to the victim, his family, and appellant's criminal history, including a prior violent offense.

{¶ 38} Consequently, after our review, we conclude that (1) appellant's aggravated murder sentence is not subject to appellate review, and (2) appellant's sentence for tampering with evidence comported with due process and is not excessive. Accordingly, we overrule appellant's third assignment of error.

*State v. Vance*, 2018 WL 1660068, at *6-7.

Again, to the extent that Petitioner raises a claim regarding the alleged violation of state law or state sentencing statutes, this claim does not provide him a basis for relief. A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988). "'[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure'" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)). Only where the error resulted in the denial of fundamental fairness will habeas relief be granted. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). Such are not the circumstances here.

The record likewise does not reflect that the trial court's sentence violated federal law. "[O]nly an extreme disparity between crime and sentence offends the Eighth Amendment." *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000) (citation omitted). Where, as here, the trial court imposes a sentence that falls within the maximum penalty set by statute, that sentence generally will not violate the Eighth Amendment. *See Hawkins v. Warden, Corr. Med. Ctr.,* No. 1:10-cv-551, 2011 WL 7396413, at *9 (S.D. Ohio Oct. 24, 2011) (citing *Bryant v. Yukins*, 39 F. App'x 121, 123 (6th Cir. 2002) (internal citation omitted)). "In the last century, the Supreme Court has struck down only a handful of non-capital sentences under the Eighth Amendment, and those cases have been egregious in the extreme." *United States v. Hughes*, 632 F.3d 956, 959 (6th Cir. 2011), *cert. denied*, 563 U.S. 1039 (2011). For example, the Supreme Court has upheld a mandatory life sentence without the possibility of parole for possession of more than 650 grams of cocaine even where the defendant had no prior felony convictions. *See id.* (citing *Harmelin v. Michigan*, 501 U.S. 957, 961 (1990)). Additionally, the Eighth Amendment does not require consideration of mitigating factors at sentencing in non-capital cases. *See Dugan v. Stewart*, No. 2:16-cv-11830, 2018 WL 5831012, at *5 (E.D. Mich. Nov. 7, 2018) (citing *Engle v. United States*, 26 F. App'x 394, 397 (6th Cir. 2001)). The Supreme Court has never held that the Eighth Amendment prohibits a trial court from imposing a sentence of life imprisonment without the possibility of parole for an adult offender on a murder conviction. *See Nitsche v. Erdos*, No. 1:17-cv-1037, 2019 WL 5300202, at *22 (N.D. Ohio July 26, 2019) (citing *Carey v. Musladin*, 549 U.S. 70, 77 (2006)).

Claim two is without merit.

## VII.  Recommended Disposition

For the reasons set forth above, it is **RECOMMENDED** that this action be **DISMISSED**.

### Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation.  See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

**IT IS SO ORDERED.**

　　__s/ *Elizabeth A. Preston Deavers*
ELIZABETH A. PRESTON DEAVERS
CHIEF UNITED STATES MAGISTRATE JUDGE